UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MILLER,

    Plaintiff,

v.

    Case No. 13-cv-14048
    HON. GERSHWIN A. DRAIN

HINKLE MANUFACTURING, LLC,
HINKLE MANUFACTURING, INC.

    Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [#26]**

**I.     INTRODUCTION**

On September 3, 2013, Plaintiff, Michael Miller, filed the instant action, alleging that Defendants, Hinkle Manufacturing, LLC ("Hinkle North") and Hinkle Manufacturing, Inc. ("Hinkle South") (collectively referred to herein as "Hinkle") breached his employment contract, of which Plaintiff and Defendant came to an agreement orally, and that Hinkle also violated the Michigan Sales Representative Commissions Act ("MSRA").  Plaintiff specifically alleges that Defendants, which are his former employers, have failed to pay him commissions on sales from his former accounts that accrued after the termination of his employment with Defendants on October 30, 2012.  Dkt. No. 1.  On September 20, 2013, the Defendants filed a Notice of Removal; the action was then removed to this Court for diversity of citizenship under 28 U.S.C. Section 1332.  *Id.*

Presently before the Court is Defendants' Motion for Summary Judgment, filed on August 14, 2014. Dkt. No. 26. The Motion is fully briefed. On September 11, 2014, Plaintiff filed a Response. Dkt No. 29. On September 25, 2014, Defendants filed a Reply. Dkt. No. 30.

On October 15, 2013, at 10 a.m., the Court heard arguments on the Motion. During the course of the arguments, the Defendants' admitted liability on a portion of the CNI account that was approximately valued to be $5,700, excluding amounts pursuant to the MSRA damages provision, which includes the statutory multiplier, costs, and attorneys' fees.

For the reasons that follow, the Court will DENY Defendants' Motion for Summary Judgment, as to the balance of the claims.

## II. FACTUAL BACKGROUND

Plaintiff, Miller, was employed as a sales representative, on behalf of Defendants, Hinkle North and Hinkle South. Hinkle manufactures automotive packaging products. Hinkle North is located in Dearborn, Michigan, and was created when Hinkle acquired the assets of Carroll Packaging. This business concentrates in the thermoforming of different types of packaging and some profile extrusions. Hinkle South is located in Perrysville, Ohio, and has concentrated in the fabrication of foam and plastic corrugated materials, which are incorporated into returnable packaging, for more than 50 years.

Beginning in 2008, Plaintiff began working for Hinkle. In his employment capacity, he solicited the sale of goods to automotive industry customers until 2012. According to Defendants, Plaintiff was responsible for servicing Hinkle's customers; bringing back opportunities to bid for orders and handling problems arising during the bid process; providing information to customers and to Hinkle's staff regarding the customers' desires; and managing the prospective sale through Hinkle's process. Plaintiff received remuneration through a base

salary and on a partial commission basis. Taber Hinkle, the President of Hinkle Manufacturing, testified that sales representatives are paid a base salary of $55,000 per year. Sales representatives are paid based on a three-percent commission of the sales of Defendants' products. Miller claims that he received payment on or about the second Thursday of each month, based on an agreement with Hinkle and past practices engaged in with Defendants.

Defendants terminated Miller's employment on October 30, 2012. Plaintiff argues that he is owed post-termination commissions on accounts, for which he was the procuring cause. These accounts include: Shuert, JCI, TRW, Autoliv, JCIM (Johnson Controls), Benteler, and CNI. He claims that he continued to be the procuring cause for certain orders from October 30, 2012 until August 31, 2013.

Defendants, Hinkle North and Hinkle South, contend that neither a written employment agreement nor written correspondence existed that detailed the terms of Miller's employment, and that all employment terms were verbal. For this reason, Defendants argue that any employment terms as to the payment arrangement for post-termination commissions did not exist. In addition, Defendants argue, in particular, that because Plaintiff did not sell any products to JCI, which is traditionally the basis for earning a commission, Plaintiff is not entitled to any additional proceeds from the account.

In a specially-arranged deal between Hinkle, JCI, and Shuert, Hinkle Manufacturing did not sell to JCI any of Hinkle's products. Instead, both Miller and Hinkle facilitated a deal to have another company, Shuert, produce the product that JCI needed. Shuert delivered the price quote and shipped the product directly to JCI. Shuert, in turn, paid a fee to Hinkle, of which Hinkle gave a portion to Miller.

### III. LAW AND ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The party seeking summary judgment "bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). The evidence presented must be such on which a jury could reasonably find for the defendant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Defendants' Motion for Summary Judgment

There is no dispute as to whether there was an employment agreement between Miller and Hinkle. Furthermore, there is no dispute as to whether there existed employment terms in regard to Miller's payment arrangement. The Parties, however, disagree as to the following factual issues: (1) the significance of the role that Miller played in obtaining purchase orders as well as the role Miller played in the JCI-Shuert deal; (2) the conditions that Miller needed to meet in order to obtain a sales commission; and (3) the precise employment terms, if any, as to how Miller was to be remunerated, particularly as it concerns post-termination commissions. Generally, Plaintiff and Defendants disagree as to what employment activities gave rise to the remittance of the three-percent commission.

These three issues are central in determining whether the employment agreement terms were, in fact, breached and also whether Hinkle violated the MSRA in denying commissions allegedly owed to Miller subsequent to his termination. Miller and Hinkle present conflicting factual allegations based on various portions of the record. Therefore it is proper for the trier of fact to decide these material factual issues presently before the Court.

### *1. Breach of Contract and the Procuring Cause Doctrine*

In order for a plaintiff to recover under a breach of contract claim under Michigan law, the plaintiff must prove: (1) the existence of a contract; (2) the terms of the contract; (3) a breach of the contract; and (4) the breach caused injury. *Pfam, Inc. v. Indiana Tube Corp.*, No. 06-11015, 2006 WL 3313772, at *2 (E.D. Mich. Nov. 15, 2006) (citing *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999)).

Both Parties concede that an agreement, albeit oral, existed. In addition, both Miller and Hinkle agree that the oral agreement's terms as to post-termination commissions were silent. Plaintiff and Defendants disagree, however, as to whether Plaintiff was the procuring cause for orders that took place after Plaintiff's termination.

Procuring cause doctrine only applies where the parties' contract does not address post-termination commissions. *Id.* at *4 (citing *APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 616 (6th Cir. 2003)). Also, under these circumstances where the employment terms are absent as to post-termination commission, "it is for the Court not to renegotiate the parties' contract, but merely to apply the law to enforce the agreement that they reached." *Fernandez v. Powerquest Boats, Inc.*, 798 F.Supp. 458, 463. As a final note, the MSRA does not create a duty to pay post-termination commissions; a sales representative may only receive commissions if the representative was the *procuring cause* of post-termination sales. *Pfam*, 2006 WL 3313772, at

*4. As a result, in this case, if Miller is able to demonstrate that he was the procuring cause of reorders subsequent to his termination on October 30, 2012, then despite the agreement's silence as to post-termination commissions, Miller can advance his argument that Hinkle breached the employment agreement and is also able to move forward in attempting to demonstrate that Hinkle violated the MSRA.

Under the procuring cause doctrine, a sales representative is entitled to commissions on sales that he generated, even if those sales took place subsequent to his termination. *Id.* Furthermore, the sales representative is entitled to commission "whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. *Fernandez*, 798 F.Supp. at 461 (quoting *Reed v. Kurdziel*, 89 N.W.2d 479, 483 (Mich. 1958) (citations omitted)) (holding that plaintiff is entitled to post-termination commission for sales with respect to his efforts, in the form of customer servicing and negotiations, were the procuring cause). To determine whether a plaintiff has been the procuring cause, among other efforts, courts look to whether the representative has participated in the negotiation of a given contract of sale with a customer. *See id.*; *see also Roberts Assocs., Inc., v. Blazer Int'l Corp.*, 741 F.Supp. 650, 652 (E.D. Mich. 1990).

A sales representative who seeks to demonstrate entitlement to post-termination commissions through the procuring cause doctrine can use several procurement theories, of which courts have upheld. *See Pfam*, 2006 WL 3313772, at *7. Under a customer procurement theory, an agent can recover commission for all sales to a customer that the agent procured regardless of whether the agent was involved in the particular sale. *Id.* at *5 (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 751 (6th Cir. 1992)). Courts accept this theory as a proper demonstration of being the procuring cause as evidenced by the terms of the employment

agreement. *See Militzer v. Kal-Die Casting, Corp.*, 200 N.W.2d 323, 325 (Mich. App. 1972). Otherwise, if the parties fail to define the terms of the employment, the representative is not protected by the procuring cause doctrine under a customer procurement theory. *See William Kehoe Assocs. v. Indiana Tube Corp.*, Nos. 88-1502, 88-2225, 1989 WL 146439 (6th Cir. Dec. 5, 1989) (per curiam).

Under a sales procurement theory, a representative can only recover commission on the specific sales that the he procures. *Pfam*, 2006 WL 3313772, at *5. "Subsequent sales to the same customer that are not procured by the agent do not yield a commission." *Id.* The last theory that courts have tended to uphold is the life of the part basis theory. Under this theory, when a plaintiff is successful in procuring a new account or order for the purchase of a part, that account or order would continue to generate sales for a long period of time; thus, the representative would be entitled to commission on reorders. *Id.* at *7. This theory overlaps with the customer procurement theory, although, the representative may not be entitled to commission on *all* sales that spring forth from procuring the customer. *See id.* (citing *Fernandez v. Powerquest Boats, Inc.*, the court found that "post-termination orders of power pleasure boats are not in the nature of reorders of fungible goods," and proposes that the two theories may not share the exact same inquiry).

### a. Non-Shuert Accounts

Hinkle argues that the procuring cause doctrine does not apply to the present case. Hinkle contends that Plaintiff simply brought opportunities to Hinkle to sell parts to third parties, and that responsibility does not fit within the scope of procuring cause doctrine. Defs.' Mot. Summ. J. 4. To support the argument that Miller was not the procuring cause of the sales, Defendants list the duties for which Miller was not responsible. The following are duties that Miller did not

perform: acting as a bookkeeper or accountant; designing any parts for Hinkle; producing the prototypes of designs created by Hinkle; preparing prices quotes related to prospective sales; scheduling the production of parts; or negotiating the prices to be paid by customers for parts ordered. Defs.' Mot. Summ. J. 3-4, Ex. 1.

Miller invokes the procuring cause doctrine because of past practices concerning a sales representative's duties and his efforts at securing customers and orders. For example, Miller points to Taber Hinkle's testimony, in which he states: "a salesperson with Hinkle Manufacturing is expected to be the quarterback through every step of the process." Pl.'s Resp. 2, Ex. A, Hinkle Dep. 21:9-25. Miller contends that a sales representative's job is the following:

> Once the customer is walked through the design/prototype process[,] and it is completed[,] a quote is prepared. Hinkle expects the customer will shop the quote with other manufacturers and hopefully, if priced properly, the quote will be competitive and result in a purchase to Hinkle. If that occurs, the sales agent earns the commission on the sale of that party for each order that is received.

Pl.'s Resp. 2. In addition, Miller testified that he was the exclusive sales representative to the accounts, which he was assigned, as well as the only sales representative who was paid commission on those accounts. Pl.'s Resp. 1, Ex. B., Miller Dep. 78-79.

### b. The JCI-Shuert Deal

Defendants assert that the payment arrangement for the JCI-Shuert deal was a "voluntary sharing arrangement by Hinkle that did not survive the termination of [Miller's] employment," Defs.' Mot. Summ. J. 12, and he is therefore not entitled to any commission as it relates to the JCI account. Miller contends differently. While he agrees that there existed a separate payment arrangement in regard to the JCI-Shuert deal, Miller contends that it had to do with the nature of the payment arrangement between Shuert and Hinkle, and not the nature of the deal itself; Miller argues that his commission was remitted after Shuert issued payment to Hinkle unlike all other

non-Shuert accounts in which his commission was applied the month after the product was shipped and received.

Defendants argue that, in any case, Plaintiff was not the procuring cause of the reorders that took place after Plaintiff was terminated and for which Miller claims that he is entitled to post-termination commissions. To support this argument, Defendants allege that newly-hired employee, Daniel Jakubiak ("Jakubiak"), the sales representative that replaced Miller, was assigned the same accounts that the Plaintiff had previously handled. Jakubiak was initially employed with Hinkle form 2007 to 2009. During his first employment stint with Hinkle, which he departed voluntarily, Jakubiak claims that JCI and JCIM were his customers during that time period. Hinkle re-hired Jakubiak as a sales representative on or about November 1, 2012, the day after Plaintiff's termination. As of November 1, 2012, Jakubiak's duties and responsibilities included procuring opportunities for Hinkle to bid on jobs. Defs.' Mot. Summ. J. 10. Defendants contend that because Jakubiak provided additional services to the customers previously handled by Plaintiff, Plaintiff can no longer be considered the procuring cause of the continuing sales. Thus Miller is not entitled to post-termination commissions, resulting from any of his past accounts. Jakubiak's affidavit and Miller's arguments raise genuine issues of material fact on who was to receive those commissions.

It is unclear to the Court, which conditions had to be met in order for Miller to receive a commission, or whether Miller completing his job duties alone entitled him to a sales commission. Hinkle contends that commission was limited to the employment period and only for goods shipped according to a specific purchase order. Defs.' Mot. Summ. J. 7. Miller, however, has testified that, as evidenced by past practices, commission was paid in the instance of a re-order and that the sales agents would do nothing other than receive credit for the sale.

Pl.'s Resp. 2, Ex. D, Miller Aff.. The Court finds a genuine issue of material fact exists with respect to whether Miller was the procuring cause of the sales for the projects that he alleges.

### 2. *The Michigan Sales Representative Commissions Act*

The MSRA protects Michigan sales representatives. Its provisions ensure that sales representatives receive full commissions to which they are entitled subsequent to termination. *See generally* MICH. COMP. LAWS ANN. § 600.2961. The MSRA states, in part:

> (2) The terms of the contract between the principal and sales representative shall determine when a commission becomes due.
> (3) If the time when the commission is due cannot be determined by a contract between the principal and sales representative, the past practices between the parties shall control or, if there are not past practices, the custom and usage prevalent in this state for the business that is the subject of the relationship between the parties.
> (4) All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

An MSRA claims is a derivative of a breach of contract claim. *Hardy v. Reynolds & Reynolds Co.*, 311 Fed.Appx. 759, 766 (6th Cir. 2009). This means that "if there is no liability on the contract claim for sales commissions, there is no corresponding violation of the Act." *Id.* In addition, as mentioned above, the MSRA does not create a duty to pay post-termination commissions; only demonstrating that the sales representative was the procuring cause of post-termination sales creates this duty. *Pfam*, 2006 WL 3313772, at *2.

Defendants' argument, contesting that Hinkle is not liable under the MSRA, hinges primarily on the ground that Hinkle did not breach its employment agreement with Miller, as understood by their understanding and interpretation of the facts, as stated above. In addition, Defendants contend that if relief is awarded to Miller under the MSRA, any relief should be exclusive of any portion of proceeds from the JCI-Shuert deal. Defs.' Mot. Summ. J. 11.

-11-

Miller's argument, likewise, hinges on the ground that Defendants did, in fact, breach the employment agreement, and intentionally withheld from him commissions owed to him, as demonstrated by past practices, such as rewarding commission based on reorders and the satisfaction of his everyday employment duties.

It remains unclear to the Court which conditions had to be met in order for Miller to receive a commission, or whether Miller completing his job duties alone entitled him to a sales commission and, as a result, whether the employment agreement was breached. This dispute in the facts must be decided before a trier of fact can resolve the alleged violation of the MSRA, therefore, the Court finds a genuine issue of material fact exists with respect to whether Hinkle violated the MSRA.

### IV.  CONCLUSION

For the reasons stated above, the Court will DENY Defendants' Motion for Summary Judgment [#26].

It is FURTHER ORDERED that based on the admission of liability on the CNI account by the Defendants, the Court will find them liable in the amount of $5,700.

It is FURTHER ORDERED that the Plaintiff is to present to the Defendants an itemized total of the claimed damages being sought, by October 20, 2014, at 9:00 a.m., notwithstanding the fact that the Defendants have documents from which it could compile said amount.

IT IS SO ORDERED.

Dated: October 16, 2014  /s/Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE